Robinson, J.
These two cases are reported together for the reason that the same questions are involved in each.
In each case the board of education determined that an emergency existed by reason of the fact that certain buildings had been destroyed by the act of God, or certain buildings had been condemned by the industrial commission.
The court of appeals held in effect that the emergency contemplated by Section 7630-1, General Code, existed, but apparently construed that section to authorize only the repairing or rebuilding of buildings theretofore existing, for the order in Case No. 17244 enjoins the issue of the bonds “except so much thereof * * * as will provide reasonable funds for the construction of two new school buildings with proper appurtenances in lieu of the two build *242 mgs shown by the evidence to have been destroyed * * * such new buildings and appurtenances to be of such capacity to accommodate the pupils of the tivo localities theretofore served by said destroyed buildings; and for the repair or rebuilding as may be necessary of the school building at Deweysville.” And the order in No. 17248 adopts the report of the referee, L. J. Crawford, as a part of its order, which report is as follows:
“Report of Referee on Vanlue Centralized School Buildings.
School order No. 21 Vanlue Public School $ 9,811.00
School order No. 106 Van Horn School
No. 3 ............................. 1,073.00
School order No. 104 Sugar Grove School
No. 8 ............................. 739.00
School order No. 105 Bell School No. 9 .. 1,205.00
School order No. 103 Ridge School No. 7 1,176.00 School order No. 108 Miller School No. 2 949.00
School order No. 107 Sub District No. 6 971.00
$15,924.00
‘ ‘ School Order No. 22.
“Estimated cost of school building for 60 pupils of fire-proof construction and equipment ........................$26,000.00
$41,924.00”
It also enjoins the school board from issuing and selling the bonds in controversy in an amount exceeding the aggregate sum of $45,000, thus limiting the application of Section 7630-1 to repairing, which means, as we understand it, the restoring of a de *243 cayed, injured, dilapidated, or partially destroyed building to a more or less sound, substantial state, or to rebuilding, which means, as we understand it, to build again something which has been demolished; for they have restricted the sale of the bonds to such sum as would repair, or, perhaps, more accurately speaking, improve certain of the buildings to comply with the order of the industrial commission and build anew the buildings totally destroyed or permanently condemned, and have ignored the provision of that section which authorizes the issuing of bonds “to construct a new school house for the proper accommodation of the schools of the district.”
With the wisdom of vesting in the board of education the discretion of determining under circumstances similar to the circumstances of these cases whether it will construct one new school house to accommodate all the pupils of the district, rather than repair or rebuild certain specific buildings, this court is not concerned, for neither it nor the lower courts are instituted for the purpose of passing upon the wisdom of legislation.
The function of the courts in these cases is to determine whether the legislature has the power to vest the discretion in the board of education. Has it so vested it? Has the board of education without abuse exercised such discretion?
The constitution especially enjoins upon the general assembly the duty to “make such provisions * * * as * * * will secure a thorough and efficient system of common schools throughout the state;” the duty to provide “by law for the organization, administration and control of the public school system of the state supported by public funds.”
*244 The power of the legislature, therefore, with reference to public schools is plenary.
The legislature in the enactment of Section 7630-1, General Code, provided: “If a school house is wholly or partly destroyed by fire or other casualty, or if the use of any school house for its intended purpose is prohibited by any order of the chief inspector of workshops and factories, and the board of education of the school district is without sufficient funds applicable to the purpose, with which to rebuild or repair such school house or to construct a new school house for the proper accommodation of the schools of the district, and it is not practicable to secure such funds under any of the six preceding sections because of the limits of taxation applicable to such school district, such board of education may, subject to the provisions of sections seventy-six hundred and twenty-six and seventy-six hundred and twenty-seven, and upon the approval of the electors in the manner provided by sections seventy-six hundred and twenty-five and seventy-six hundred and twenty-six, issue bonds for the amount required for such purpose. For the payment of the principal and interest on such bonds and on bonds heretofore issued for the purposes herein mentioned and to provide a sinking fund for their final redemption at maturity, such board of education shall annually levy a tax as provided by law.”
The section aptly and exactly declares that under circumstances such as exist in these cases, the board of education may remedy the situation by raising funds to “rebuild” the destroyed or prohibited building, or to “repair” the destroyed or prohibited building, in either of which enterprises by a fair *245 interpretation its activities would be confined to the rebuilding or repairing of a building to take the place of the building destroyed or prohibited; but the legislature was not content to thus limit the power, for it provided another alternative, “or to construct a neio school house for the proper accommodation of the schools of the district.”
In this provision the legislature did not confine the board of education to the replacement of one schoolhouse by another, but specifically empowered the board to replace “the schools of the district” by “a new schoolhouse,” thus clearly authorizing the board of education, under the circumstances of these cases, to do one or two of three things: first, rebuild destroyed or prohibited buildings; second, repair destroyed or prohibited buildings; third, build a new schoolhouse to take the place of all the schools of the district. And the discretion to determine which one or two of the three courses it will pursue is vested in the board of education. The board of education here, in the exercise of its discretion, determined to build a new schoolhouse to take the place of the schools of the district. Its action in that respect may or may not have been wise, but it was acting within the power vested in it by law, and it is not within the province of a court, because perchance that court if acting as a board would have exercised that discretion in a different way, to substitute its judgment for the judgment of the board invested by law with the duty and responsibility of exercising its discretion and determining the needs and requirements of the district under its supervision.
*246 The lower courts do not appear to have rested their judgments in these oases upon an abuse of discretion, and under the circumstances, of these cases there would seem to be no abuse of discretion in the conclusion of the board to build a new building to take the place of the schoolhouses of the district and in the submission to the electors of the question of issuing bonds.
The authorization of a large issue of bonds does not require the issuing of all the bonds authorized. The opportunity for abuse of discretion is still in the future. It is, therefore, not the intention of this court in rendering judgment in these cases to foreclose any taxpayer of either district from raising the question of abuse of discretion in the event that the plans and specifications adopted for the new buildings are, in the judgment of a taxpayer, out of all proportion to the needs and requirements of the district.
The judgment of the court of appeals in each case will be reversed, and the injunction dissolved.
Judgments reversed.
Johnson, Hough, Wanamaker, Jones and Matthias, JJ., concur.